[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
The plaintiffs performed a variety of services for the defendant. They trucked and moved furniture. They built and delivered several ottomans and end tables. The most important item was the construction of a custom designed treatment table. The defendant is a physician specializing in the treatment of arthritis and one of the techniques he uses is to expose his patients to electro magnetism. The treatment table must be capable of holding a patient in a prone position while a doughnut shaped magnet is passed back and forth over the body. Based on CT Page 2041 specifications furnished by the defendant, one of the plaintiffs drafted plans for the construction, and those plans were approved by the defendant. The plaintiffs submitted a proposal that the table would cost $972 plus the cost of canvas, which cost turned out to be $119.88 and also plus the cost of a tray to hold the magnet and the track for the tray to move on at $475 for a total proposal of $1,566.88. Although there is a conflict in the testimony on this point, I find as a fact that during the course of construction, the defendant altered the specification requiring that parts of the table had to be taken apart and put back together again. After delivery, it developed that there was a problem with the magnet tray moving on the track and the defendant had this remedied by a third party. There was no evidence as to the cost of this correction but the work took approximately one hour so I conclude that a reasonable credit for that work would be $40. The plaintiffs then sent a bill to the defendant for $3,280 which included not only the treatment table but also the moving, the ottomans and the end tables. Apparently the bill was itemized but it was not offered in evidence and there was no testimony as to how the bill was broken down. The defendant complains that the workmanship of all the carpentry items was deficient to the extent that they are unusable. The fact is, however, that the ottomans and end tables, which were delivered in June, 1990, have been continuously in use through the time of trial, and the treatment table was used for several months before he had it replaced. His own expert testified that the quality of work on the treatment table was good. I conclude that any deficiencies that exist in that table result from the designs which he approved rather than in execution. During the course of the work, the defendant paid the plaintiffs $500 on account.
I find the claim of the plaintiffs that they put in 150 to 200 hours on the construction of the table to be unrealistic. Their original proposal of $1,566.88 is believable, and incidentally is almost $400 less than the defendant paid for a replacement table made of different, more expensive, materials. There was no testimony as to the additional time required to conform to the changed specifications but as I find that the changes did require additional work, I add on the nominal amount of $100. As there was no evidence of the price of the moving the end tables and the ottomans, I add on another nominal $100. Giving credit for the $500 paid on account and the $40 for the repair work, leaves a net amount due the plaintiffs of $1,226.58.
At trial, the defendant abandoned the second special defense, a claim that the plaintiffs had dealt with a corporation rather than him personally. Judgment may enter for the plaintiffs in the amount of $1,226.88.
J. HEALEY, STATE TRIAL REFEREE. CT Page 2042